## CITIZENS' TRUST CO. v. MULLINIX.

### In re PEMISCOT LUMBER CO.

(Circuit Court of Appeals, Eighth Circuit.   September 4, 1916.)

### No 4564.

1. BANKS AND BANKING &106—ACTS OF OFFICERS—ACCOUNTING.

Where the cashier of a bank, who was president of a lumber company and authorized to draw checks for the lumber company, directed entries charging the account of the lumber company with a sum of money to be made on the books of the bank, but no check for the amount was drawn, the cashier must be held as acting for the bank in his capacity as cashier, and not as president of the lumber company.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 253–256; Dec. Dig. &106.]

2. BANKS AND BANKING &106—ACTIONS—EVIDENCE.

In a proceeding where a bank asserted, as against the estate of a bankrupt lumber company, a claim for a sum of money charged on its books against the bankrupt which had been taken by the cashier of the bank, who was president of the bankrupt and authorized to draw checks on its account, held, under the evidence, that the bankrupt was not bound; no check having been discovered.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 253–256; Dec. Dig. &106.]

3. SUBROGATION &26—RIGHT TO SUBROGATION.

Where a bank paid drafts to which were attached notes of a bankrupt lumber company, secured by liens, and marked the notes paid, the bank, having been under no duty to pay the drafts and having no interest to protect, was not subrogated to the liens securing the notes.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. § 67; Dec. Dig. &26.]

4. APPEAL AND ERROR &843(2)—REVIEW—QUESTIONS PRESENTED FOR REVIEW.

Where an appeal in a proceeding involving claims against a bankrupt was by stipulation limited to two claims, as to one of which the question of preference only was involved, the question whether claimant had been paid need not be reviewed, after a decision that claimant was not entitled to preference as to one claim and that the other claim was unenforceable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3331; Dec. Dig. &843(2).]

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

In the matter of the bankruptcy of the Pemiscot Lumber Company. Claim by the Citizens' Trust Company, as liquidating agent and receiver of the Pemiscot County Bank, opposed by F. C. Mullinix, trustee of the bankrupt. From the judgment denying one of the claims and priority of another, claimant appeals. Affirmed.

Everett Reeves and C. G. Shepard, both of Caruthersville, Mo., for appellant.

J. R. Turney, of Jonesboro, Ark., for appellee.

Before HOOK and CARLAND, Circuit Judges, and MUNGER, District Judge.

&For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

CARLAND, Circuit Judge. The controversy on this appeal arises out of the mutual accounts of the Pemiscot County Bank and the Pemiscot Lumber Company. The bank failed June 5, 1913, and the lumber company was adjudicated a bankrupt January 5, 1914. The appellant, as liquidating agent of the bank, filed claims against the estate of the lumber company, to the allowance of which the trustee in bankruptcy objected. With the assistance of an expert accountant the referee in bankruptcy heard the evidence for and against the claims and made findings of fact. Upon review these findings were confirmed by the District Court. In this court the following stipulation appears in the record:

"It is agreed and stipulated that the account between the appellant and the bankrupt estate shall be and it is hereby accepted and adopted by both parties hereto as found and determined by the referee, except in the following particulars:

"(a) The appellant claims, in addition to the amount found by the referee, the sum of $7,500 debited to the account of the Pemiscot Lumber Company with the Pemiscot County Bank on January 14, 1913, for which there is no check.

"(b) That the appellant insists that the claims upon the Going note in the sum of $2,013.90 and upon the Henry note in the sum of $4,901.67, of date November 21, 1912, are preferred claims."

[1, 2] The item of $7,500, above mentioned, was disallowed by the referee. It appeared on the books of the bank under date of January 14, 1913, as a debit item against the lumber company, but no voucher could be found among the papers of the bank for such an entry. On the same day the books of the bank showed an entry whereby A. C. Tindle, who was then cashier thereof, and also president of and authorized to draw checks for the lumber company, had received credit for the amount debited to the lumber company. Tindle was a defaulter to the bank, and no evidence was produced that the lumber company ever received any portion of the $7,500 charged against it on the day mentioned. The referee found that the two entries simply showed that Tindle had taken $7,500 of the lumber company's money out of the bank for his own use and benefit; that, if Tindle directed the entries to be made upon the books of the bank of which he was cashier, he did not bind the lumber company, for the reason that, in directing the entries to be made, he would be held to be acting for the bank in his capacity as cashier, and not as president of the lumber company.

It was the contention of the claimant, in the court below and here, that Tindle or some one having the right to draw checks against the account of the Pemiscot Lumber Company, drew a check in favor of A. C. Tindle in the sum of $7,500; that said check was duly charged against the account of the lumber company and credited to the account of A. C. Tindle, and that the check had been lost or destroyed. The claimant also called as a witness one L. A. Ferguson, a bookkeeper, who testified that in making entries on the books of the bank, especially against the Pemiscot Lumber Company, he either had a check, draft, or debit slip or something; that he did not recall any special charge by debit slip against that account, but he knew it was

done that way. The witness was quite sure he had something to go by in making the entries on the books.

After all is said, the only thing to support the claim is the debit entry against the lumber company on the books, unsupported by any voucher or any evidence tending to show that the lumber company received the money; whereas, the books apparently show that Tindle received it individually. We think the referee and the District Court were justified upon the evidence in holding that the claim had not been proven.

[3] The only other matter for consideration is the claim that the amounts due on the Going and Henry notes, amounting to $2,013.90 and $4,901.67, respectively, should be allowed against the bankrupt estate as preferred claims. We see nothing to sustain the contention that the claims ought to be preferred. These notes were similar in character given by the lumber company to Henry and Going for value received, and both were secured by liens upon the property of the lumber company. When the notes matured they were attached to drafts drawn upon the lumber company and forwarded to the Pemiscot County Bank. When these drafts were received by the bank, they were paid, and the drafts and notes accompanying the same marked "Paid." For some reason which does not appear the bank never charged the amount of these drafts to the lumber company on the bank's books.

The claimant insists that, because the amount of the drafts were not charged to the account of the lumber company upon the books of the bank, the latter is entitled to be subrogated to the lien of the drawers of the draft, as the transaction simply amounted to a purchase of the notes by the bank. This contention cannot prevail. Whether the proper entries were made on the books of the bank or not, the fact still remains undisputed that the drafts and notes were paid when they were presented to the Pemiscot County Bank, and that ended the matter; they now stand as general claims against the bankrupt, but without preference. The bank, when it paid the drafts and the notes, had no interest of its own to protect, the payments were purely voluntary, and no fact is shown which would entitle the bank to the right of subrogation.

[4] The view that we have taken in regard to the claims in issue renders it unnecessary to consider as to whether the contract of July 12, 1913, in connection with the deed of trust executed by Tindle and wife to the bank, constituted a payment of all the obligations of the lumber company to the bank or not, as we find that the claim of $7,500 is not sustained on the merits, and the only question reserved by the stipulation in regard to the Henry and Going claims is the matter of preference.

Judgment affirmed.